**In re BARR.**

**Patent Appeal No. 4835.**

**Court of Customs and Patent Appeals.**

**Feb. 7, 1944.**

Pennie, Davis, Marvin & Edmonds, of New York City (C. M. Fisher, of Washington, D. C., and R. T. McLean, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner finally rejecting claims 1, 5, and 7 to 16, inclusive, of appellant's application for patent on method and apparatus for preservation of biologically active substances. Four claims stand allowed.

The specification recites that "such substances as sera, protein solutions, bacterial cultures, pharmaceutical and glandular substances, viruses and other labile biological substances" are included, and it is stated that the application—"relates more particularly to improvements in processes and apparatus for sealing such substances in final containers under high vacuum after desiccating such substances by freezing them and removing water under a high vacuum."

We quote the following general description from the brief of the Solicitor for the Patent Office:

"The process disclosed by appellant's application * * * comprises freezing the material to be treated and removing the water from it by evaporation in a vacuum while the material is in a frozen condition. In carrying out this process the frozen material, in bottles, is placed in a vacuum chamber and stoppers for the bottles are supported immediately above them by means of an adjustable plate. When the vacuum treatment has been completed, the plate is lowered to force the stoppers into the bottles. Heat is supplied to the vacuum chamber in regulated amounts, to facilitate the evaporation."

Claims Nos. 1, 9, 10, 11 and 15 are directed to the apparatus; the others to the process.

Claims Nos. 1 and 5 seem fairly to illustrate the claimed invention. They read:

"1. Apparatus adapted for the production of desiccated biologically active and other material sealed in evacuated containers comprising a chamber adapted to be hermetically sealed provided with an outlet through which the chamber may be evacuated and with a removable wall section, means within said chamber to support a plurality of containers in fixed positions, means within said chamber to support a perforable stopper above each said container, and externally actuated means for introducing said stoppers into the necks of

the containers, and for forcing them into tight engagement therewith to effectively seal the containers."

"5. The process of producing desiccated biologically active and other substances in evacuated final containers provided with perforable stoppers which comprises introducing a large number of containers provided with open necks and containing frozen material to be desiccated into a chamber, sealing such chamber, producing a high vacuum within the chamber whereby water is removed from the frozen material, introducing a perforable stopper into the neck of each container and forcing such stoppers into tight engagement therewith, simultaneously and without breaking the vacuum."

The references cited are:

Shipley, 111,264, Jan. 24, 1871.

Tapscott, 649,012, May 8, 1900.

Taylor, 1,340,921, May 25, 1920.

Van Doren, 1,451,351, Apr. 10, 1923.

Smith, 1,718,603, June 25, 1929. .

Reichel, 2,066,302, Dec. 29, 1936.

It appears that of the reference patents cited, that to Reichel is the only one which relates to a biological. As stated in the brief of the Solicitor for the Patent Office, it—" * * * discloses a method of treating biologically active substances which comprises freezing them, evaporating the water from them in a vacuum, while they are still frozen, and applying heat to facilitate the evaporation. The flasks containing the material may be sealed in an evacuated state."

The Smith patent relates to pharmaceuticals, more specifically to ampules for use in mixing drugs. It shows a receptacle having a stopper, preferably of rubber, adapted to be perforated to permit the removal of material, the mouth of the container being flame-sealed above the stopper.

The Shipley patent discloses apparatus and process for canning and preserving meats, fruits, vegetables, etc. It shows bottles which are held in a fixed position with their tops in a vacuum chamber, corks fitting loosely in the tops. After the atmosphere is exhausted from the bottles the corks are pressed tightly into them, while in the vacuum, by a movable head actuated by a screw.

The Tapscott patent discloses apparatus for seating and sealing covers of receptacles, such as cans and jars, used in canning processes. The receptacles are held in fixed positions in a vacuum chamber, the closures for them being held directly above them by a plate movable from outside the chamber by means of a screw. When the air has been evacuated from the receptacles the plate is moved downwardly and forces the covers simultaneously over the mouth of the receptacle.

Taylor and Van Doren disclose apparatus for forcing closures into receptacles.

The patent to Taylor relates particularly to treating and canning milk, and his operation is carried out in a vacuum.

The patent to Van Doren relates to apparatus for bottling liquids and illustrates a method of sealing by insertion of the stopper. Nothing is said in his patent of the operation being carried out in a vacuum. ,

In the statement of the examiner following the appeal to the board, the claims were, in effect, divided into groups, or classes, and that arrangement was followed by the board.

Claims Nos. 1 and 15 (apparatus claims) were grouped together and rejected as unpatentable over Tapscott.

Claims Nos. 9, 10, and 11 (the remaining apparatus claims) were rejected as unpatentable over Shipley, "especially in view of Reichel."

Process claims Nos. 5, 7, and 8 were held unpatentable over Reichel in combination with Tapscott. The examiner also held this group unpatentable over either Taylor, Shipley or Tapscott in view of Reichel and Smith. Of the latter rejection the board said it "may be considered cumulative." The examiner also included claim No. 6 in the foregoing group, but his rejection of that claim was reversed by the board and it stands allowed.

Process claims Nos. 12, 13, 14, and 16 were rejected by the examiner "on the references and reasons cited against claims 5 to 8 taken with the remarks noted against 9 in reference to the heat," with the further statements, "Reichel regulates the supply of heat" and "The material in Shipley and Taylor is out of contact with the chamber walls," and this ground was approved by the board.

It is conceded by appellant that the "underlying" process involved is disclosed by the patent to Reichel. The specification of his application states:

"Insofar as the process of freezing and removing the water is concerned, the pro-

cess which is advantageously used is one described in the Reichel patent 2,066,302, with freezing of the material by indirect exposure to a refrigerant maintained at — 70°C. or lower, and with condensation of the water vapor removed under the influence of a high vacuum by exposure to a refrigerant maintained at a similarly low temperature * * *."

Appellant's brief states:

"The underlying process is described in the Reichel patent 2,066,302 * * *. The present invention is directed to improvements in process and apparatus for carrying out the procedure which permit its practical application to the large scale processing of biologicals at a feasible cost and in a useful volume, with the final product sealed within a container."

The brief further states:

"Neither the Examiner nor the Board of Appeals regarded the claims on appeal as anticipated. The Examiner rejected them as unpatentable over the various references, that is, as lacking invention, and the viewpoint of the Board of Appeals was the same.

"Our position is that from the standpoint of both the process and the apparatus claims, the differences in structure and procedure between the subject matter of the claims and that of the prior art was given insufficient weight by the Patent Office tribunals, that is, these tribunals erred as a matter of law in failing to give due weight, on the question of patentable novelty, to both differences in structure or procedure and differences in materials treated. We do not assert that these patents belong to a nonanalogous art, in which case they could be used neither as primary nor secondary references, but that differences in structure and procedure, between the claims and the references, must be evaluated in the light of the differences in material treated by the patentees and the appellant.

"The real question presented is whether one skilled in the art, with the description of the Reichel patent before him, would find in the other patents to which the Patent Office tribunals have referred sufficient suggestion to use the processes and apparatus of the claims on appeal to warrant saying that all that appellant did was apply the skill of his art to the problem."

The foregoing is followed by an elaborate argument in which the various features of the several references are set forth and the differences between the apparatus features of the prior patents and those of appellant's application are pointed out in detail.

So far as the process claims are concerned, we are wholly unable to discern wherein they differ in any patentable sense from the process disclosed by Reichel. Appellant is concerned with the same substances covered by the Reichel patent. He uses the same process of freezing and removing the water from the material which Reichel discloses, and, like Reichel, seals the flasks of material in a vacuum. The following statement in the brief of the Solicitor for the Patent Office is regarded as apt:

"The appellant's contribution to the art * * * is merely a specific arrangement for sealing the flasks or other containers used in the Reichel process. This problem of sealing is entirely independent of the specific nature of the material in the containers and of the specific temperature conditions to which such material is subjected. It is simply a matter of applying tight closures simultaneously to a number of containers in a vacuum, without disturbing the vacuum condition."

With respect to the apparatus claims, it is true that the respective tribunals of the Patent Office did not hold them to be specifically anticipated by the disclosures of the prior art as expressed in the apparatus disclosures of the patents cited. In effect, those tribunals held that, in view of the features disclosed in such prior art, no invention over them is involved in appellant's disclosure.

With that holding we agree.

All the pertinent features of the prior art alluded to have been set forth above and they here may be compared with the apparatus features of appellant's disclosure.

Tapscott's mechanism was designed for pressing covers over the mouths of receptacles located in a vacuum. Appellant's mechanism is designed for pressing stoppers into the mouths of receptacles located in a vacuum. In operation, the mechanisms work in much the same manner. Tapscott closes the mouths of his receptacles by forcing covers over them; appellant closes the mouths of his receptacles by forcing stoppers into them. Neither the covers of Tapscott nor the stoppers of appellant constitute any part of either's apparatus. Furthermore, Shipley and Taylor disclose mechanisms for forcing stoppers into the mouths of receptacles in a vacuum cham-

**994**

ber. It is true that Shipley shows only the mouths of the receptacles inserted in the vacuum chamber, while appellant's receptacles are wholly within such chamber, but in the case of Taylor his cans are wholly within the vacuum. It is also true that Shipley shows the use of corks which are not perforated for closures and Taylor shows nonperforated closure features designated as caps, the material not being named, while appellant shows the use of "perforable stoppers, such as rubber stoppers." But, as stated, the stoppers form no part of the apparatus, and, aside from this, the patent to Smith shows a stopper, preferably rubber, adapted to be perforated.

We do not overlook the fact that appellant's apparatus is designed for the treatment, as described, of substances which differ from the substances treated by the various patentees (except Reichel whose patent does not seem to embrace any apparatus claims) and that necessarily he had to modify the features shown in combination in those patents, but we are unable to agree that the modifications so made constituted invention, or that the question of the patentability of the apparatus claims should be determined upon the basis of the material which goes into the receptacles, or influenced by the specific process with which the apparatus is used.

For the reasons stated, the decision of the board is affirmed.

Affirmed.