Johnson, Chief Judge,
delivered the opinion of the court:
This is an appeal from a decision- of the Patent Office Board of Appeals, rejecting claims 8 to 13, inclusive, of appellant’s application No. 143,760, filed February 11, 1950,: for “Improvements in Concrete Inserts,” as unpatentable over the prior art. No claims have been allowed.
Claims 8 and 9 are representative of the appealed claims and read ■as follows: ’
8. A concrete insert comprising a metallic channel member having pairs of longitudinally spaced anchor tongues projecting outwardly from the back wall thereof, said tongues consisting of portions of the wall material displaced angularly from the wall whereby openings result in the latter; and cover plates fitted over said openings and having portions extending thereinto to prevent displacement of the plates.
9. A concrete insert comprising a channel member and an end closure member, said closure member consisting of a strip of metal provided adjacent one of its ends with angularly disposed wings fitting into the end of said channel member, said strip having an angular flange at its other end extending in a direction opposite to said wings to provide an anchor for the channel.
The invention relates to concrete inserts of the type used to facilitate attachment of objects to concrete ceilings, walls or the like. In essence, it consists of a U-shaped channel member with pairs of tongues punched out of the back wall of the channel, said tongues serving as anchors to secure the channel member in the concrete. Each tongue of a pair is so punched out of the back face of the channel member that it lies in a plane perpendicular to the plane of the back face. The openings in the back face, formed by the punching out of the tongues, are closed by means of cover plates having extensions which fit into said openings to prevent displacement of the plates. The cover plates are disclosed as being forcibly fitted between each pair of tongues and as serving to prevent loose concrete from entering the channel member. End closures are provided for the channel member, said closures fitting into the ends of said channel member by means of wing extensions. These closures also serve to prevent loose concrete from migrating into the channel member. In one embodiment, a flange extension with notches therein is provided at the portion of the end closure which is flush with the front face of the channel member (viz — the open end of the channel), said extension and its notches serving to receive nails for securing the closure to the concrete forms. In another embodiment, the end closure is extended in the direction of the back face of the channel member to provide additional anchoring means to secure the channel in the concrete. The *826 alleged advantage of the disclosed insert is that it provides for ad-justability of the position of the element secured in the insert and “that the channel, without modification, may be rolled and cut off to any desired length and subsequently provided with anchor tongues, cover plates, etc.”
The references relied upon are:
Brown, 827,613, July 31,1906.
Chase, 1,409,524, March 14,1922.
Tomkinson et al., 1,491,571, April 22,1924.
Timm, 1,561,126, November 10,1925.
Attwood, 2,345,650, April 4, 1944.
German Patent, 480,624,1929.
The Brown patent, insofar as pertinent, discloses a concrete insert consisting of an elongated, square tube with struck-up portions from its rear surface serving as anchors. The tube is slotted at the opposite face so that objects to be received may be inserted therein.
The Chase patent discloses a concrete insert consisting of a trough whose sides flare outwardly on the concrete side of the insert and which is provided with a cover plate containing projections at each end thereof to aid in securing the cover on the trough.
The Tomkinson patent, insofar as pertinent, discloses a concrete insert in the form of a box having closed ends. Flush with the front of the box, on each end, is a flange having a notch therein for receiving a fastener to anchor the insert to the form prior to pouring the concrete.
The Timm patent discloses a concrete insert consisting of a U-shaped channel member with a fin extending perpendicularly from the back side thereof. Struck out of the fin are tongues used to anchor the channel member in the concrete. End closures (caps) fit over the ends of the channel member to prevent concrete from entering the ends of said member.
The Attwood patent discloses a supporting structure (viz — for scaffolding, ladders, etc.) comprising a channel member identical to appellant’s with end closure means for said member.
The German patent discloses a concrete insert consisting of a slotted face plate with tongues struck-up from said plate in such a manner that they are secured to said plate at the ends thereof and are perpendicular thereto. A U-shaped cap is inverted and press-fitted between the turned-up sides of the face plate. Cleats are provided on the tongues to urge against the inverted cap and secure it in place.
Claim 8 was rejected by the board as unpatentable over Brown in view of Chase. The board was of the opinion that, though Brown makes no provision for preventing entrance of soft concrete into the channel through the openings left when the tongues are struck there *827 from, this feature was suggested by Chase. We agree with the board that claim 8 does not define invention over these two references. In our opinion, the “tube” of Brown, with its “struck-up” portions, is the full equivalent of appellant’s channel and tongue element. As urged in the Solicitor’s brief, the distinction is semantic only. If it were discovered that the loose concrete tended to migrate into the channel through the openings formed by striking up the tongue elements, it would be obvious to cover the openings, as suggested by Chase. The projections on the cover plate of Chase are equivalent to those claimed by appellant. Appellant urges that the cover plate of Chase is not equivalent to his since it is part of the box portion which has no anchor tongues as in appellant’s element; that Chase relies on the shape of his box to prevent it from being pulled out of the concrete.
This appears to be a repetition of the age-old argument that for a reference to be applied against a claim in combination with another, the teachings of the former must be incorporated bodily into, those of the latter. This argument has been rejected before. In re Henley, 44 C. C. P. A. (Patents) 701, 239 F. 2d 399, 112 USPQ 56. The Chase reference was relied upon by the board not for its overall teaching as to concrete inserts but for its teaching broadly the use of a plate to cover an aperture through which the passage of soft concrete is to be prevented. For this purpose it is sufficient.
Appellant further urges that Brown must fail as a reference since the embodiment applied against appellant’s claims was the tubular structure disclosed by Brown; that “if, as Brown states, he uses a tube, neither he nor the Examiner discloses how the ‘stirrup’ may be ‘struck up’ ”. It would suffice to say that it is obvious to us how the “stirrup” (the tongue) could be “struck up,” for one could simply strike up the tongues from a flat plate, fold the plate to form a square tube (Brown discloses the use of a square tube) and then weld the edges of the plate together. Doubtless, there are other ways to accomplish the result.
Be this as it may, it is well settled that where the article ' claimed is disclosed in a prior patent, the claim may be rejected on that patent notwithstanding the fact that the process by which the patentee claimed the product could be produced is inoperative. In re Marden and Rentschler, 18 C. C. P. A. (Patents) 1119, 48 F. 2d 428, 8 U. S. Pat. Q. 515; In re Von Bramer et al., 29 C. C. P. A. (Patents) 1018, 1024, 127 F. 2d 149, 53 USPQ 345. Clearly, appellant can stand in no better position where the patentee discloses no process for making the article claimed or where appellant can not discern from the patent disclosure how to construct the article as disclosed.
*828 Claim 10 was rejected by the board as unpatentable over the references cited in connection with the rejection of claim 8 in view of the German patent. The language of claim 10 adds to claim 8 the px-ovisions that the openings formed by striking up the tongues are “between” each pair of tongues and that the cover plates are “forcibly fitted” between the tongues of each pair. We are of the opinion that the board was correct in rejecting this claim over the cited references. It is true, as appellant urges, that Brown’s tube is disclosed as having-tongues struck-up so that the openings formed in the back face of said tube are not between the tongues. On the contrary, the tongues are at adjacent ends of each opening, the opening being on the outer side of each tongue. We do not deem this difference to be significant;. Chase discloses the use of a cover plate on a concrete insert, one of whose purposes is obviously to keep loose concrete from entering the main body of the insert, and the German patent discloses the press-fitting of a cover plate into the face plate of a concrete insert. To reai’range the slotted and struck-up portions of Brown so that a cover plate can be force-fitted between the tongues would, in our opinion,, be a common expedient. And though the cover disclosed by the Ger-mán patent is not a “plate” as in appellant’s device, the same problem of retaining a cover is presented in each case and is solved in the same manner.
Appellant has done no more than to select a plurality of individual features from the prior art and incorporate them into a unitary structure without materially altering the structure or function of each individual feature and without producing any new or unexpected result.
Claim 11 is essentially drawn to the same device as is recited in claim 10 with the additional limitation that separate means close the ends of the channel member. This claim was rejected by the board over the references cited against claim 10 in view of Attwood. We disagree with the board that Attwood is a good reference to be combined with the others cited against this claim. Attwood is related to an entirely non-analogous art (supporting structures for use in-scaffolding, ladders, etc.) and the end closure of Attwood is used for a purpose entirely different from that of appellant (the former is used to conceal the channels from view.) It would be as appropriate* in our opinion, to cite a reference from the container art, showing a cap on a bottle, as it would be to cite the Attwood reference. We feel, nevertheless, that it would be obvious to the skilled artisan, with the Brown, Chase and German patent disclosures before him, to pi'o-vide an end closure to seal off the channel member from ingress of loose cement, if the problem presented itself. For these reasons* we agree with the board’s rejection of claim 11.
*829 Claim 12 is dependent upon claim 11 and adds thereto the provision that the end closure means “is itself provided with an anchor portion.” The board rejected this claim as unpatentable over Brown in view of Chase, the German patent and Attwood. Again, we feel that the Attwood disclosure was not properly combined with the other cited references. But again, we feel constrained to agree with the board’s rejection of this claim. The German patent shows the use of anchor elements located at the ends of a concrete insert. While those anchor portions are not attached to an end closure, it is not seen that it would be more than a matter of choice to so provide such anchor portions if it were desired to more firmly anchor the end portions of the insert. No new or unexpected results would accrue therefrom. We have already noted, in connection with claim 11, that it would not rise to invention to provide the insert of Brown with such end closures.
Claim 9, which has heretofore been reproduced, was rejected by the board as unpatentable over Timm in view of the German patent. It was the board’s opinion that the latter patent suggested the use of anchor portions on the end closures of Timm and that “to provide an anchor on the closure for securing it also to the concrete seems to us to be but an obvious extension of the idea of anchoring the channel itself.” It regarded the distinction between the end closure of Timm (which fits over the end of his channel as a “cap”) and that of appellant (which fits into the channel) as a mere matter of choice in design. We agree with the board’s rejection of this claim. That the German patent discloses no end closure as such is immaterial, as discussed in connection with claim 12.
Claim 13 is similar to claim 9 but adds the limitation thereto that the end closure has an edge provided at the end of the end portion (at the edge opposite to the anchor extension of claim 9), said edge “being provided with notches for receiving fastening means.” This notched edge, as disclosed, is flush with the face of the insert and is used to secure the insert to the concrete form prior to the pouring of the concrete. The board rejected this claim as unpatentable over the references cited in connection with claim 9, in view of Tomkinson. It was of the opinion that Tomkinson disclosed the idea of a notched extension for the same purposes as disclosed by appellant. We are constrained to agree with the board’s decision on this claim. Appellant urges that Tomkinson shows no end closure in the “patent sense”; that Tomkinson’s anchors are integral with the slotted face of the insert; etc. Again, appellant seems to be pressing the “bodily incorporation” argument which we rejected in connection with claim 8. Tomkinson was not relied upon by the board for his overall teach *830 ings of a concrete insert, but merely for the broad idea of providing a notched extension at the end of a concrete insert for securing the insert to the concrete forms prior to pouring the concrete. • This, we feel, Tomkinson discloses. Claim 13 is not deemed patentable over the cited references.
Lastly, appellant argues that:
If the present device is a collection of old elements, which is not admitted, it still is patentable in that it provides a function — adjustability—which does not appear in the prior art. * * *
Appellant’s contention in this regard is directed to the fact that since his insert can be of indefinite length, the item to be attached in the insert can be so attached at any point along its length. It is unnecessary to consider the legal merits of appellant’s argument, for this function of adjustability is not only expressly disclosed in Brown, but in Chase, as well.
For the foregoing reasons, the decision of the board is affirmed.