**Application of Arthur E. TROIEL.**
**Patent Appeal No. 6480.**

United States Court of Customs
and Patent Appeals.
Feb. 9, 1960.

Bruce & Brosler, Berkeley, Cal., for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the final rejection of claims 2, 4, 5 and 10, the only claims remaining in application Serial No. 165,039, filed May 29, 1950, entitled "Hole Cap and Tool Therefor."

In setting up forms into which concrete is poured for making structures such as walls, dams, etc., ofttimes, either initially or in reuse, the lumber used has holes or other imperfections in its surfaces. To prevent the concrete, as it is poured into the forms, from escaping through holes and to provide a smooth surfaced concrete structure, something is needed to cover the holes or other defects in the wood. It is to this that appellant's invention is directed.

Appellant denominates that which is used for covering the holes a "hole cap." The cap itself is a disk having, on a circle concentric with and inwardly of the periphery of the disk, a plurality of tabs triangular in shape pushed out to extend from one side only of the disk. The side edges of the tabs adjacent their hinge lines may converge towards the disk, the purpose being to allow some of the wood fibers which are displaced when the tabs are driven into the wood to resume their original positions, hence lock the tabs into the lumber. Additionally, the cross section of the tabs taken on a plane cut through them and parallel to the plane of the disk may be slightly arcuate in shape to provide a tab of greater strength and rigidity.

The disk may also be of magnetic material. A tool useful for applying the "hole cap" to the lumber is described by appellant as having a base at least as large as the disk and a handle attached to the base centrally thereof. The base includes a magnet portion which functions to hold the disk against the base of the tool. By striking the tool holding such a disk when it has been positioned over a hole or other imperfection, the disk may be driven into the lumber.

Claims 2 and 10 are representative.

"2. A hole cap for covering holes and imperfections in lumber such as employed in the erection of forms for pouring concrete structures, comprising a circular plate having a plurality of pointed tabs extending from one side only of said circular

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'Connell, pursuant to provisions of Section 294(d), Title 28 U.S.C.

plate and at locations surrounding a central solid portion of substantial area adapted to mask such a hole or imperfection, and along substantially a circle of less diameter than said circular plate to provide a moisture guard ring about said arrangement of tabs when said cap is anchored to the surface of such lumber."

"10. In combination, a hole cap for covering holes and imperfections in lumber such as employed in the erection of forms for pouring concrete structures, comprising a disk of magnetic material, and a plurality of pointed tabs struck from said disk along substantially a circle lying symmetrical with the center of said disk; and a positioning tool for use in applying said disk to lumber, said tool comprising a base having an area substantially corresponding to the area of said disk, said base having a magnetic pole at its lower end for magnetically holding to said base one of said disks, and a handle extending upwardly from said base and centrally thereof to which a force may be applied after positioning a disk over a hole or imperfection to be masked."

The references relied upon by the examiner and the board are as follows:

| | | |
|---|---|---|
| Stowe | 797,083 | August 15, 1905 |
| Popple | 800,243 | Sept. 26, 1905 |
| Spreen | 1,669,541 | May 15, 1928 |
| Buchner et al. | 2,202,896 | June 4, 1940 |
| Sampson | 2,551,970 | May 8, 1951 |
| Brown | 2,602,958 | July 15, 1952 |

The Spreen patent discloses a rectangular sheet metal piece used for covering imperfections and holes in lumber used in concrete forms. It is provided with a plurality of triangular tabs on one face of the piece which tabs are adjacent two opposite edges thereof and which extend in one direction only therefrom, which piece is attached to a piece of lumber by driving the tabs thereinto.

The Stowe patent is directed to an anchoring device. It discloses a circular disk having a plurality of triangular tabs struck out from the disk which tabs extend alternately from opposite sides of the disk. In use, the tabs on one side extend into, for example, a packing crate, and the tabs on the other side extend into the wooden floor of a car or wagon. The device then prevents the crate from sliding over the car's floor while being transported.

Sampson discloses a device comprising a flat head having two tapered legs which extend in the same direction from the head, which are arcuate in transverse cross section, and which are convergent adjacent the head. The device is used for fastening electrical conductors to a panel, the legs fitting into preformed slots on the panel.

. The Buchner et al. and Brown patents show serrated tangs having converging portions at the base of driven wood penetrating tabs.

The Popple and Buchner et al. patents show tabs or prongs having arcuate cross sections to add to the prongs' strength and rigidity. In this connection the board also referred to the corrugation of sheet metal used for roofs, etc., to strengthen the sheeting.

■ · The examiner rejected claim 2 "as unpatentable over Stowe alone or in view of Spreen." The Board of Appeals stated that it preferred Spreen as a primary reference. It was the board's opinion that it was an obvious extension of the Spreen teachings to provide prongs or tabs on all four sides if the sides without prongs were found to engage the lumber too loosely. The board felt that "the particular shape of the plate does not appear to us to be patentably significant and, at best, the difference is deemed one of degree." Although the board found the Stowe patent to be from a non-analogous art, it felt that Stowe suggested the circular arrangement of the prongs embodied by appellant in his device.

■ With respect to claims 4 and 5, the board was of the opinion that the additional limitations of the "side edges

converging to the disk" and of each tab having an arcuate cross section were well-known expedients in the driven fastener and sheet metal arts. To support this position, the board cited Buchner et al. and Brown as illustrative of the convergent side edge feature and Popple and Buchner et al. as exemplary of the arcuate cross section feature, all used in their respective environments to perform the functions attributed to them by appellant. The board concluded that "appellant has in effect merely associated into a single device a plurality of individual old and well-known features which do not exceed the aggregate individual results expected therefrom." Although the board added to the record of this case the Buchner et al., Brown and Popple patents, they did not consider the use of those references to involve a new ground of rejection within the meaning of Rule 196(b), 35 U.S.C. Appendix.

A further limitation in claims 4 and 5, i. e., that the disk be of magnetic material, the purpose of which is apparent from claim 10, was stated to add nothing to the cap structure since it was "capable of performing its hole covering function whether or not it is magnetic." Additionally, the board said "the 'sheet metal plate 11' of Spreen is in all probability made of steel."

As respects claim 10 which was rejected by the examiner as being drawn to an aggregation, the board viewed the examiner's use of the term "aggregation" as meaning an unpatentable combination. See In re Worrest, 201 F.2d 930, 40 CCPA 804. The board stated that the cooperation of the cap and tool claimed by appellant does not differ in substance from that between a magnetic tack hammer and tack, and that it found nothing unobvious or unexpected existent in the combination recited.

Appellant argues that his invention involves the recognition of a problem and its solution which is unappreciated by the cited prior art. He especially points to the fact that his claimed invention embodies a "moisture guard ring," referring to the annular metallic area between the circle on which the tabs have been struck out and the outside periphery of the disk. It is asserted that such a configuration prevents exposure of the embedded tabs and wood fibers adjacent to them to moisture and makes the hole cap hug the wood surface more closely, thereby lessening the likelihood that it would become so embedded in the concrete pour that it would be pulled out of the lumber when the form is removed.

With respect to the other features, the converging side edges and the arcuate cross sections of the tabs, it is argued that in utilizing those elements a novel and patentable combination is produced, and that the rejection by the board based upon the large number of references cited is "farfetched and illogical." Appellant states that the use of a magnetic material is neither taught nor suggested by Spreen and predicates patentability upon that feature. We are further urged to treat all but Spreen as non-analogous art.

In connection with claim 10, appellant asserts that the board's reliance on a magnetic tack hammer and tack is illogical because the problems involved in driving tacks and in the application of hole caps are very different. He points out that the hole caps are much larger in diameter than are conventional tacks. He asserts that his hole cap and tool is a patentable combination of elements.

Divested of all beclouding verbiage, the basic issues simply stated appear to be the following:

1. Would the modifications of Spreen made by appellant have been obvious to one of ordinary skill in the art at the time the invention was made?

2. Are any new and unexpected results produced by the combination of the hole cap and the holding tool?

In response to the first question, it is our opinion that the various modifications of the Spreen patent which appellant claims do not produce a patentable invention.

Although Spreen's thin metal plate is rectangular and has "a plurality of point-

ed tabs extending from one side only" whereas appellant's is circular and has similar tabs, that variation is considered to be one merely of design without patentable significance. Appellant states that his disk together with the pointed tabs circularly located a relatively short distance inwardly from the periphery of the disk "maintains in a substantially dry condition, the wood encircling such tabs." There is nothing to indicate that the Spreen invention would not produce the same result. Certainly the fact that appellant's embodiment is circular would not in and of itself maintain the alleged substantial dryness, the so-called moisture guarding, and if such a moisture problem became apparent it would not require more than ordinary skill to provide tabs at all four sides of the Spreen plate to hold the plate more snugly to the wood around its entire periphery. We agree with the board that claim 2 is not patentable.

Claim 4 recites additional features, namely, that the disk shall be made of "magnetic material" and that "each of said tabs * * * [shall have] side edges converging to the disk from which the tab extends." Obviously, the limitation comprising the "magnetic material" of the disk standing alone contributes nothing upon which patentability of the hole cap could be predicated. The other feature which aids adherence of the disk to the wood is so well known that references to establish that fact are unnecessary. However, since the board relied upon the Buchner et al. and Brown patents, which we believe are from analogous arts, to support its rejection of this claim, we see no reason not to mention their teachings approvingly in connection with our conclusion that the board was correct in affirming the rejection of claim 4.

The arcuate formation of the tabs is the only additional limitation found in claim 5 not recited in claims 2 and 4. In the art this feature has been applied for the purpose of strengthening and rigidifying metal fasteners and sheet metal for so long that it needs no citation of references to show that it would be obvious to one of ordinary skill in this art to so modify Spreen. But, again, the board has seen fit to base its affirmance of the examiner's rejection upon the prior art references, namely, the Buchner et al. and Popple patents, of which references we take cognizance in affirming the board's rejection of claim 5. We do not believe that the Popple reference should be considered non-analogous art either.

In substance in claims 4 and 5, appellant has combined well-known mechanical features in his device which function no differently than one skilled in the art would expect and, therefore, he has created no patentable invention. In re Beltz, 181 F.2d 203, 37 CCPA 1004; In re Murdoch, 84 F.2d 195, 23 CCPA 1198; In re Attwood, 253 F.2d 234, 45 CCPA 824.

As to claim 10, appellant does not contend that the combination of a magnetic fastener and an instrument having a magnetic head such as a tack and a magnetic hammer is new but that his particular combination is patentable because his magnetic tool is of substantially the same dimensions as the disk. He reasons that this combination permits the disk to be accurately located over a hole in lumber because the positioned tool which magnetically holds the disk when force is applied against the tool more readily allows the tabs to be driven simultaneously and evenly into the lumber without the occurence of buckling of the tabs or the disk.

Although appellant has devised an efficient process by which to drive the tabs of the disk simultaneously and uniformly into the lumber exactly where desired, our responsibility is to determine whether he has invented a patentable combination. Patentability of mechanical claims cannot be based upon the process with which the apparatus is to be used. In re Barr, 140 F.2d 991, 31 CCPA 866.

The basic idea, i. e., a magnetic fastener being held in place by a magnetic pole instrument and driven into wood by means of a force exerted against that instrument is not new. Furthermore, the only difference between appellant's combination and a tack and mag-

netic hammer is the relative size of the disk and positioning tool on the one hand and the head of a tack and the head of a hammer on the other. It is well established that the mere change of the relative size of the co-acting members of a known combination will not endow an otherwise unpatentable combination with patentability. Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; In re Irmscher, 171 F.2d 303, 36 CCPA 767; In re Bennett, 40 F.2d 755, 17 CCPA 1113.

In this combination we find no new or unexpected results. Utilizing the combination claimed here would be obvious to one skilled in the art. The further distinction that appellant endeavors to make, i. e., that in the case of the hammer and tack the force is applied by the hammer itself without additional means, whereas in his process the force to drive the tabs into the wood is initiated by an additional instrument, if not of patentable significance. We therefore affirm the board's rejection of claim 10.

In view of the foregoing analysis and conclusions with reference to claims 2, 4, 5, and 10, the decision of the Board of Appeals is affirmed.

Affirmed.