48 CCPA

**Application of Vasil GEORGEFF.**

**Patent Appeal No. 6694.**

United States Court of Customs and Patent Appeals.

July 7, 1961.

Henry L. Shenier, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 1–5, all of the claims of appellant's application for a patent, serial No. 558,114, filed January 9, 1956, on a "Dual Force Inching Brake for Power Presses."

Claim 1, on which claims 2–5 depend, reads:

"1. In a power press having a frame having a drive shaft rotatably mounted on the frame, an inching brake assembly including in combination a brake housing, a brake disk carried by the drive shaft for rotation therewith, a brake plate stationary relative to the brake housing and carried thereby, a brake plate movable relative to the brake housing and carried thereby, means for moving the movable brake plate to clamp the brake disk between the brake plates to immobilize the drive shaft with respect to the brake housing, means for mounting the brake housing for rotary motion relative to the frame, means normally preventing said rotary motion, means for rotating the brake housing with said

brake disk clamped when it is desired to inch the press and means operable during an inching operation for increasing the pressure with which said movable brake plate clamps said brake disk between **said** brake plates."

The references relied on by the examiner and the board are:

| | | |
|---|---|---|
| Danly, | 2,755,687, | July 24, 1956. |
| Kegresse (French), | 927,421, | May 5, 1947. |

———◆———

Appellant's invention relates to an improvement in power presses which receive intermittent operational energy from a continuously rotating flywheel. In such presses, the driving train, ram, and dies are held in inoperative position by a brake. When press operation is desired, the brake is released and the driving train is clutched to the rotating flywheel. At the end of an operational cycle, the clutch is disengaged and the brake is engaged. Ordinarily the press proceeds through a cycle very rapidly and with great force. For certain occasional operations such as a change of dies or a trial stamping or forming operation, it is desirable to "inch" the press slowly through an operational cycle.

Appellant is claiming an improvement in the "Inching Assembly for Power Presses" disclosed in the Danly patent.[1]

In the Danly assembly, a rotatable shaft is geared to the press driving train. A disk fastened axially to one end of this shaft bears friction pads and is clampable between two annular brake plates not attached to the shaft. One brake plate can be moved axially away from the disk. This combination of brake disk and annular brake plates comprises the brake of the press. The brake plates and disk are held in clamped operative position by springs. The movable annular brake plate is connected to an annular piston contained in an annular cylinder. The brake is released by applying fluid pressure to the cylinder so that the piston pulls the movable annular brake plate away from the brake disk in opposition to the spring force. The two annular brake plates are otherwise integral with the brake housing which is rotatable relative to the press frame by an auxiliary motor-gear arrangement. Thus when the brake is operative and the brake housing is rotated, *the brake acts as a clutch* and the press shaft is rotated. In this way, press train operation can be carried out independently of the usual flywheel driving force and solely by the brake housing rotation. Since this rotation is slow, reversible, and easily controlled, the press can be "inched" in either direction through its operational cycle.

Appellant has acknowledged the Danly assembly in his application but has observed that the clutching strength of this assembly is not sufficient to permit forming a piece of metal between the press dies. It appears that the springs holding the annular brake plates against the disk friction pads are not strong enough so that the torque necessary for a metal forming operation will be transmitted from the motor which rotates the brake housing through the brake to the press driving shaft. The annular plates slip past the friction pads. Although stronger springs would obviously make the Danly assembly a more powerful clutch, they would also make it a brake of undesirable strength. Appellant contemplates a change in the Danly assembly such that only the springs will function when the assembly acts as a brake while an additional clamping force will be applicable when it is desired to have the assembly

---

[1] The Danly patent issued on application serial No. 318,299, filed November 1, 1952 and hence copending with the application at bar. It appears that the Danly patent and appellant's application are commonly assigned.

act as a clutch in a metal forming operation.

It is evident, as appellant appears to admit, that appealed claim 1 recites only the combination of elements disclosed by Danly in further combination with "means operable during an inching operation for increasing the pressure with which said movable brake plate clamps said brake disk between said brake plates." Dependent claims 2–5 recite either embodiments of said "means" with varying degrees of specificity or details of the Danly assembly. Appellant concedes that if claim 1 is considered unpatentable, the remaining claims would fall with claim 1. Nevertheless, it appears appropriate to consider the specific embodiment of "means" disclosed by appellant for improving the Danly assembly.

Appellant discloses replacement of the Danly piston-cylinder brake release with an annular piston movable in an annular cylinder designed so that fluid pressure can be applied to *either* side of the piston. The piston is connected to the movable annular brake plate as in Danly, and can pull the brake plate away from the brake disk in opposition to spring forces, thus releasing the brake as taught by Danly, or can push the brake plate more tightly against the brake disk, thus permitting more torque to be transmitted through the assembly. The latter operation is not possible with the Danly assembly since in it, fluid pressure can be applied only to one side of the piston.

The French patent to Kegresse discloses hydraulic clutches designed to permit clutching a shaft to a flywheel of an engine. In one pertinent design, a clutch plate is attached axially to the end of the shaft to be driven. This clutch plate is clampable axially against a driving flywheel by a movable annular friction ring which rotates with the flywheel and which is urged toward the flywheel by springs. The friction ring is connected to an annular piston movable within an annular cyclinder contained within the peripheral portions of the flywheel. Oil pressure can be applied to either side of the annular piston. As taught by Kegresse, oil pressure is available only when the flywheel is rotating. When the flywheel is at rest, the clutch plate is sandwiched between friction ring and flywheel by spring force alone. When the flywheel is rotating, oil pressure is applied to the annular cyclinder so that the annular piston moves, either clamping the clutch plate more tightly between the friction ring and the flywheel, thus increasing the clutching force beyond that supplied by the springs, or pushing the friction ring away from the clutch plate in opposition to the spring force, thus disengaging the clutch. Kegresse contemplates that such a clutch design will permit starting a vehicle engine by pushing the vehicle since the clutch is always engaged by spring force except when deliberately disengaged by oil pressure.

The examiner rejected the appealed claims "as being unpatentable over the disclosure of Danly in view of * * * the French patent * * *." The examiner stated:

"No invention is seen to lie in replacing the *single acting* hydraulic device of Danly with a *double acting* hydraulic device as taught in the French patent. It is thought that one skilled in the art, having the Danly and French patents before him, would be able to intelligently combine the teachings of the two disclosure without any suggestion from applicant's disclosure.

* * * * * *

"The two references applied in the rejection of claims 1–5 are thought applicable because Danly is an inching assembly for power presses, as is applicant's device; and the French patent (secondary reference) is concerned with clutches, not in the least foreign to applicant's problem."

The board affirmed the examiner, stating in part:

"We agree with appellant that the conception of an improvement must be considered along with the actual means of achieving the improvement, that in many cases the discov-

ery of a problem is often an essential element in correcting such a problem. In this case, however, we believe that the problem was an obvious one; upon attempting to inch the press through a working stroke, the friction brake which is called on to function as a friction clutch has insufficient force to transmit the high torque whereupon slippage results. In our opinion, this problem would be apparent to a person having ordinary skill in the art."

After stating that the problem appears to be one in the clutch or brake field and that it would not be unobvious to seek the solution to the problem in the clutch or brake art, the board stated:

"The clutch art then, in our opinion, clearly teaches the use of a hydraulic operator to augment or add to spring force to engage, and to release the spring force for disengagement. We agree with the examiner that a person having only ordinary skill in the art, with the Danly and French devices or disclosures before him, would be able to incorporate the clutch teachings and structure of the French patent in the Danly clutch. The French patent clearly teaches means for increasing the spring pressure with which a movable clutch or brake plate clamps the disk."

The only issues to be determined by this court are (1) whether it is obvious to try to perform a metal forming operation while "inching" a power press by means of the Danly assembly; and (2) whether appellant's modification of the Danly assembly represents a patentable advance over Danly in view of the French patent to Kegresse.

We agree with appellant that in determining the issue of unobviousness, the question whether the applicant conceived the basic idea is significant and should be considered along with the means of accomplishing the desired result.

However, this concept of forming a piece of metal as part of other testing and adjusting procedures was known in the power press art before the Danly apparatus was part of that art. Therefore, it is reasonable to assume that once the Danly "inching" apparatus was perfected, in the natural course of events, one skilled in the art would endeavor to stamp a piece of metal when using the Danly device during the "inching" process. The whole "inching" process was conceived and is used to prepare a power press for a series of normal stamping operations, and quite obviously test stamping a piece of metal would help to attain this goal. In any event, we do not believe that it would be unobvious for one skilled in the art to think of using the Danly device to stamp a piece of metal.

Further, we do not believe, in view of the Danly apparatus which discloses the basic concept and assembly for "inching" presses and which was adopted completely by appellant, that the added element of supplementing the spring force would be unobvious to one skilled in the art who observes that slippage occurs while endeavoring to stamp a piece of metal. We are of the opinion that the alleged problem of how to increase the pressure in the clutch action so that a piece of metal could be formed would obviously present itself as soon as the Danly apparatus was operated to this end and slippage occurred, if in fact it did occur. So we do not agree with this facet of appellant's argument that he not only solved the problem but discovered it as well. Likewise we disagree with appellant's position that the problem existed for a long time in the art without being solved and, therefore, his solution must have been unobvious to those skilled in the art. The record before us does not support this contention of appellant. The Danly "inching assembly" application was co-pending with the one at bar. Therefore, it is difficult for us to comprehend how the problem of slippage in the Danly device has been present for many years as claimed by appellant.

Furthermore, this concept which is stressed so much by appellant is not recited in any of the claims.

■ So much for the concept itself. Now as to the combination recited in claim 1, the only element not disclosed by Danly is the means for increasing the clutching action during an "inching" operation. We find nothing unobvious or unexpected in the cooperation of the old Danly elements and this new one. Each element including the new one reacts as expected. Therefore, the combination is unpatentable. In re Smith, 161 F.2d 274, 34 C.C.P.A. 1007; In re Attwood, 253 F.2d 234, 45 C.C.P.A. 824. Whether it be a power press, an automobile or power tools, the reinforced clutching action would be the same and not unexpected. Merely because the primary purpose of the Danly spring element is to brake the power press, once the concept of using this element as a clutching device to "inch" the press has been revealed by Danly, there is no unexpected result in increasing the spring-caused clutching action by supplementing it with some other force such as hydraulic pressure so that a piece of metal can be stamped during the "inching" process.

The French patent teaches in so many words the very means appellant maintains he has discovered. The Kegresse specification states: "If the valve (6) is operated so that the oil penetrates the chamber (11) [2] the pressure of this oil is added to the pressure of the springs (18) in order to secure the engagement." To maintain that this patent is not pertinent here as appellant does, demonstrates the miscomprehension on his part as to the nature of his invention. His contribution lies in an improvement in the clutching action of the Danly patent and nothing more. Therefore, it would be obvious for one skilled in the clutch art, with the teachings of the French patent, to devise appellant's specific hydraulic pressure improvement.

■ In view of the above considerations, we see nothing patentable in the concept of performing a metal forming operations while inching a power press with the Danly assembly. We hold further that the combination of elements recited in claim 1 is not patentable over the combination disclosed by Danly in view of the disclosure of Kegresse.

Since appellant concedes that if claim 1 is considered unpatentable, claims 2–5 would be also, we will not discuss these claims. For the above reasons, we *affirm* the decision of the Board of Appeals.

Affirmed.

2. The annular cylinder contained within the peripheral portions of the flywheel.