32 C.C.P.A. (Patents)

In re WAGNER et al.

Patent Appeal No. 5020.

Court of Customs and Patent Appeals.

May 24, 1945.

Raymond J. Mawhinney, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D.C., (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Claims 20 to 25, inclusive, of appellants' application for a patent relating to a recording maximum demand meter were rejected by the Primary Examiner of the United States Patent Office upon the prior art cited, and some of the claims for other reasons which, in view of our conclusion, we need not state or discuss. Upon appeal, the decision of the examiner was affirmed by the Board of Appeals. From the decision of the latter, appellants have here appealed.

A recording maximum demand meter does not total the electrical current in the manner that the conventional household watt-hour meters do but merely records the existing demand at periodical intervals, such as every quarter hour. The necessity for the installation of a recording meter so as to determine the existing demand periodically is brought about by the fact that the supplier of the electricity must be in a position at all times to take care of a great many customers if they were continuously consuming current. Some customers might not use more than a small amount of electricity, although their capacity for using it would, at certain times, be much greater. The recording meter involved here is for the purpose of determining a charge to each consumer over and above the electricity consumed, based upon the demand which might be made upon the supplier of electricity, by reason of the fact that he must always be able to take care of each consumer's highest demand. With the aid of such devices the supplier is better enabled to determine the maximum demand which might be made.

The claims involved were rejected upon the following prior art references: Meloney et al., 1,006,968, Oct. 24, 1911; Kinney, 1,060.984, May 6, 1913; Wilson 1,133,-597, Mar. 30, 1915; Heitman, 1,256,130, Feb. 12, 1918; Pogue, 1,279,378, Sept. 17, 1918; Hall, 1,742,072, Dec. 31, 1929; Timson, 1,-800,850, Apr. 14, 1931; Warner, 1,933,356, Oct. 31, 1933; General Electric Catalog GEA—612C (1936).

Claim 25 is thought to be sufficiently illustrative of the appealed claims, and since it is the claim upon which appellants particularly rely, it is here set out: "25. In a device of the character described, the combination with a driven metering mechanism, of a printing element comprising

a shaft driven from the metering mechanism and a printing disk carried by said shaft and having raised printing characters formed upon its outer face and disposed around said disk adjacent its edge, a clock mechanism, means for feeding a narrow, elongated, transparent chart strip across the center of the printing disk and in substantial parallelism therewith and under the influence of the clock mechanism, said chart strip having pre-printed time designations along its length, means for maintaining a carbon strip in place between the chart strip and the printing characters, a striking platen disposed outwardly of the plane of the chart strip, means controlled by the clock mechanism and acting to move the platen with striking force toward the printing characters and at time intervals corresponding with those preprinted on the chart, a fixed index printing surface, separate from but disposed adjacent to the edge of the printing disk and in substantial alignment with the center line of the feed of the chart strip, the outer face of said fixed index lying substantially at the level of the outer faces of the characters upon the printing disk to act simultaneously with said characters as a printing element when the chart and carbon paper are forced toward said characters and index by said platen, and means for retracting said platen to a position to leave visible through the transparent chart the marks made by the carbon strip upon the underside of the transparent chart as a result of said chart and carbon strip having been forced against the printing characters and index point."

The examiner in a very detailed way, in his rejection upon the prior art, had the following to say (omitting material relating to other grounds of rejection, etc.):

"As has been pointed out, claim 26 is directly readable on Meloney et al., this patent showing the rotative disc c², the fixed index e² and platen f as recited.

"Claim 27 adds feed means for the record receiving strip shown at x in Meloney et al and for a carbon strip having its general equivalent in the ink strip y. Whatever advantage applicants' structure may have over that of this patent, it is certainly not defined by substitution of a carbon sheet such as shown old in Heitman or a carbon strip as in Fig. 30 of the G. E. Catalog (page 53) for an ink ribbon. [While claims 26 and 27 are not on appeal in this court, the above is quoted as explanatory of that which follows.]

"Claim 25 adds a clock drive for the chart, old in a majority of the references and shown particularly in Wilson and G.E. Fig. 30, and feeds the chart across the center of the printing disc whereby arcuate printing with respect to the index is effected crosswise of the strip as in Fig. 9 of Kinney instead of lengthwise as in Meloney et al., Fig. 7 and G.E. Fig. 30. In addition to other features above recited, claim 25 also includes preprinted time designations along one edge of the chart as disclosed in the G.E. reference, lines 8-10 of column 2, page 53, and also in Warner and Pogue, and provides a chart with printing on the under side permitting entire visibility of the latest recording, as shown old in Wilson.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Claim 23 is similar to claim 25 in its association of independent old features, omitting only the index, which is added by supplemental claim 24, and shown old in Meloney et al, G.E. Fig. 30, Kinney and Timson.

"No response has been vouchsafed to the rejection of the foregoing claims.

"Earlier claim 20 is similar to claim 23 except for the addition of the independent zero resetting feature for the printing mechanism, specifically old in Hall if not in all the other references, and in emphasis of the complete visibility of the chart down to the last impression. This latter feature is old, e.g. and stressed in the G.E. reference, page 53, column 1, lines 5—7 from bottom. Regarding zero resetting it is obvious that the particular use determines whether or not resetting occurs after each printing stroke. Obviously if each impression is to represent the demand since the last impression, zero resetting is necessary. Provision of such common and well known necessary means is neither novel nor inventive regardless of its association with other desired but absolutely independent features above recited.

"Claim 21 supplements claim 20 by the addition of the index feature old in G.E. Fig. 30, Meloney et al, Kinney and Timson; and supplemental claim 22 stresses the lengthwise direction of the index on the chart, a feature old in Kinney. Obviously the index e² of Meloney et al (Fig. 5) could be located where index a⁵ is, if across-center instead of across-edge printing were desired. Both the concept and the execution of this lengthwise extending index however are old in Fig. 9 of Kinney.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"No one reference admittedly shows all the claimed independent features. In view of the different uses to which various reference structures are put it would be incompatible e.g. to have the Meloney et al chart driven by a clock mechanism. Similarly references showing a transparent chart could not have all the claimed features and perform their desired functions. Applicants have selected and associated together, — not combined, — various desired features from the art to effect their desired result.

"Inasmuch as every one of the nine independent features variously claimed are all old in the art and not one of the several associations thereof effect any unitary result, through mutual cooperation, it is submitted the final rejection of all claims on the grounds of lack of patentable relationship between independent desired features and lack of invention over references are sound and should be sustained."

The Board of Appeals affirmed the examiner generally and expressly as to his rejection on the prior art. The material portion of the board's decision reads:

"As to the remaining claims [those on appeal in this court], they stand rejected on the ground that each of the independent features variously claimed are all old in the art and the several associations thereof effect no unitary result through mutual cooperation. Appellants do not seem to contest this but argue that their meter has certain important functional advantages because of the refinement of construction which they urge. They have stated four points in this connection. The chart is said to be clear and legible, which obviously would be desirable in any chart. The readings are printed transversely of the chart so that much paper is saved and that is concededly shown in Kinney. The last impression upon the chart is immediately available for inspection and that seems to be a feature brought out in the General Electric Catalog. Additionally the fixed index gives the uniform point of comparison but prior art illustrates such index.

"After reviewing appellants' remarks, we are not convinced that there is any patentable novelty in the grouping of the old elements as in the claims on appeal.

"For the reasons more fully discussed by the examiner, the decision of the examiner is affirmed as to claims 20 to 25 inclusive."

The prior art has been explained by the examiner, and his views thereon have been approved by the board. While appellants attempt to point out that certain features of the prior art relied upon by the tribunals below are not proper subject matter to consider in connection with the rejection of the claims, it is not seriously contended here that the references do not disclose that which the examiner stated they disclose.

It is the contention of appellants, as we understand it, that their simplified combination of elements old in the art is such a combination as required invention to produce it, and that since they have greatly improved the art in respects which they point out, they are entitled to the allowance of the appealed claims. They contend also that no structure having these capabilities is to be found in the prior art.

In cases like this one, it is not necessary that any structure in a prior art reference disclose all the elements of a claim the patentability of which is in issue. It has been so frequently held as to require no citation of authority that the Patent Office may properly combine references for the purpose of rejecting claims. However, even though all the individual limitations of a claim are shown in the prior art, there still might be invention in combining the old elements.

The question here presented, therefore, is whether, in view of the suggestions of the prior art, the appellants' improvement in making such a combination is one that required the exercise of the inventive faculty, or whether what they did was that which would be obvious to the skilled mechanic.

Ordinarily, a combination claim, the elements of which are made up of prior art items, must show some new, unexpected, and useful result. It should not be merely the assembling into one device of the various desirable features disclosed in the prior art, when each of the old elements performs in the new combination its same old function.

We have carefully considered appellants' arguments, both oral and written, but we are not convinced that the tribunals of the Patent Office were in error in rejecting the appealed claims for the reasons stated.

The decision of the Board of Appeals is affirmed.

Affirmed.