47 CCPA

**Application of Maurice E. HATTEN.**
**Patent Appeal No. 6572.**

United States Court of Customs and Patent Appeals.

July 6, 1960.

Murray, Sackhoff & Murray, Cincinnati, Ohio (Walter S. Murray, Cincinnati, Ohio, of counsel), for appellant.

Clarence W. Moore, Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's final rejection of claim 5, the only remaining claim in the appellant's application, Serial No. 473,964, filed December 8, 1954, entitled "Anti-Lockout Device for Automobile Doors."

The board's rejection was on the ground that the claim is for an obvious combination of old elements, the references relied on being:

Fitz Gerald 2,105,350 January 11, 1938
Azano 2,613,258 October 7, 1952

The appealed claim reads as follows:

"5. In a device of the character described the combination with a key controlled automobile ignition switch including a slotted case, a barrel rotatable therein from a normal inoperative position to an operative ignition position, and a bar biased toward normally projected position into the slot and retractible into the barrel when a key is inserted in the barrel and the barrel rotates to operative ignition position, of a switch biased toward closed position and normally held in an open position by the projected position of the bar, a door latch mechanism, a manual push button actuated locking means for the latch mechanism having a fixed abutment thereon, a movable stop means on the door normally disengaged from the

---

* United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CON-* NELL, pursuant to provisions of Section 294(d), Title 28 U.S.C.

abutment, an electrically energized power means for engaging the stop means with the abutment to render inoperative the push button actuated locking means, an electric circuit including said switch and the power means, and a door operated switch in the circuit normally held in open position when the door is closed and closing the circuit when the door is ajar."

The device described by the claim is intended to prevent a careless motorist from locking himself out of his car with the key left in the ignition switch—something which can easily happen with cars in which the same key is used to operate both the ignition switch and the door lock, such doors usually having a push button or some such device which can be set so that closing the door will both latch and lock it.

The device consists of an electrical circuit connecting the ignition switch of an automobile with a door lock control mechanism, the circuit including two switches in series, one closed by the insertion of the key into the ignition and the other by the opening of the door.

The door lock control assemblage consists of the usual push button and rod, the latter normally operable to lock the latch mechanism, and an arm which can be moved into the path of an abutment on the rod, halting the rod short of its operative position and thus preventing the locking of the door.

A solenoid, when activated, is the means by which the arm is advanced. The solenoid cannot, of course, be activated unless the two switches above referred to are both closed. If either one is open, the circuit is broken and the system inoperative.

The applicant does not suggest that the door lock control part of the system is novel, and it can be easily seen that Fitz Gerald substantially anticipates it. The use in the structure of the application of an "abutment" to halt the operation of the bush button rod instead of Fitz Gerald's cross pin is the substitution of a full equivalent. In Fitz Gerald, the energization of an electromagnet (solenoid, in the application) when the circuit is closed moves a slide (arm, in the application) into a position in the path of the cross pin (abutment, in the application) with the result that the rod cannot be advanced to lock the door. The operation is exactly that of the application.

The ignition lock and adjacent switch of the application is substantially the Fitz Gerald embodiment shown in Figs. 1, 2 and 3 of that patent. The only discernible difference is that in Fitz Gerald, after the key has been inserted to draw the locking bar back into the barrel, contact with the adjacent switch, established by the retraction of the bar, may be broken by rotating the barrel, since one of the switch contacts is mounted on it and will be moved out of alignment with the other contact by its rotation. In the system described in the applicant's specification, as long as the key is in the lock, the switch will be closed without regard to the rotation of the barrel, that is, whether the engine is turned off, stalled or running. This may be an improvement, but the claim contains no limitation requiring that contact be maintained when the key is turned in the ignition to the "on" position, and the specification, disclaiming the details of the ignition switch lock, states that "any other instrumentality may be employed which provides movement of a bar, or an equivalent element, when a key is inserted in the lock." Fitz Gerald provides movement of a bar when a key is inserted in the lock. Thus, so far as the ignition switch assemblage is concerned, the claim reads directly on Fitz Gerald's disclosure. Moreover, if it is desired to maintain contact in the Fitz Gerald assemblage when the key is turned to the "on" position, it would be an obvious expedient to take the switch contact that is mounted on the cylinder and mount it in such place and manner that it would be unaffected by rotation of the cylinder.

With the applicant's ignition lock assemblage (which will maintain electrical

contact regardless of the rotation of the cylinder so long as the key is in the lock) it is, of course, undesirable to have the solenoid in the door continuously energized, if for no other reason than the excessive drain on the car battery. Azano, whose patent was for a warning device rather than a disabling device for the door lock, had the same problem. His patent had an ignition switch assemblage which, although not exactly like that of this application, was its full equivalent and which could[1] keep the door lock control energized when the motor was running as well as when it was turned off. Azano's problem was in his case especially troublesome because, instead of a mechanism to prevent the door from locking, he had a buzzer which buzzed continuously when the key was in the lock and the motor not running. He eliminated this drawback by inserting a "Microswitch" into the circuit that would allow the circuit to close only when the door was open. Such a simple expedient would seem to be obvious to those skilled in the art, particularly in view of the disclosure of a door actuated switch in the Azano patent.

Thus the combination claimed consists of the Fitz Gerald system with a slightly altered ignition lock switch plus the microswitch of Azano controlling the operation of the door lock mechanism. Both of these changes would be, we think, perfectly obvious to a person skilled in the art. Or, looked at in another way, the combination consists of the Azano system, minus the vacuum switch, with an equivalent ignition switch assemblage and the Fitz Gerald door lock control mechanism substituted for the buzzer— an equally obvious approach in the development of the art.

None of the various elements which the applicant has brought together in his system performs a new function but each operates as it did in the old setting in which it is to be found. Combining them, as in the application, establishes no new functional relationships among them, and the result obtained by the combination, even though an improved one, is not unobvious.

The decision of the Board of Appeals is affirmed.

Affirmed.

---

1. Azano has an additional vacuum operated switch to disable his warning system if the motor is running. As the board said, "This, however, is an additional switch for an additional useful purpose which can obviously be eliminated, if not desired, along with its function without in any manner involving anything of patentable merit."