**Application of Alexander C. McCABE.**

**Patent Appeal No. 6649.**

United States Court of Customs and Patent Appeals.

March 15, 1961.

Carl Hoppe, San Francisco, Cal. (James F. Mitchell, San Francisco, Cal., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 12 and 13 of appellant's application for a patent on machines for heating glass tubing. Certain claims have been held by the examiner to be withdrawn from consideration under the provisions of Rule 142(b), 35 U.S.C.A.Appendix, and are not before us. No claims have been allowed.

The appealed claims are:

"12. Apparatus for reshaping lengths of glass tubing comprising a frame, a first and a second horizontal shaft rotatably mounted on said frame in parallel relationship and at substantially the same elevation, a plurality of first rollers on and disposed normal to said first shaft, a plurality of second rollers on and disposed normal to said second shaft, said first roller being positioned offset on the corresponding second rollers in a direction parallel to the axes of rotation of said

[1]. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'Connell,* pursuant to provisions of Section 294(d), Title 28 U.S.C.

shafts, means for rotating one of said shafts, said shafts being spaced apart and said rollers having diameters such that a length of glass tubing positioned on said rollers is cradled thereby above the level of said shafts and rotated by said rollers as the shaft revolves, and means for holding a short length of glass tubing in contact with the roller cradle comprising a shiftable hold-down roller, a bell crank rotatably mounting said hold-down roller, and manually operable means for shifting said bell crank to operate said holddown roller into and out of contact with a short length of glass supported by said rollers said holddown roller having its axis of rotation parallel to said shafts; and means for heating a portion of glass tubing supported on said rollers.

"13. Apparatus for reshaping lengths of glass tubing comprising a magazine having an inclined floor consisting of a plurality of inclined slat members, a fixed, longitudinally extending stop at the lower end of said magazine, said last mentioned stop being triangular in cross section with one shortest side substantially vertically disposed and positioned toward the upper end of said magazine, feeding means associated with said magazine and including a longitudinally extending horizontally disposed member arranged for vertical reciprocation adjacent said longitudinally extending stop, manually operable means for reciprocating said member, whereby lengths of glass tubing may be urged from said magazine one by one by lifting said lengths over said shorter side of said fixed stop to roll down one of the other sides of said stop, a frame, a first and a second horizontal shaft rotatably mounted on said frame in parallel relationship and at substantially the same elevation, a plurality of first rollers on and disposed normal to said first shaft, a plurality of second rollers on and disposed normal to said second shaft, said first rollers being positioned offset on the corresponding second rollers in a direction parallel to the axes of rotation of said shafts, means for rotating one of said shafts, said shafts being spaced apart and said rollers having diameters such that a length of glass tubing positioned on said rollers is cradled thereby above the level of said shafts and rotated by said rollers as the shaft revolves, and means for holding a short length of glass tubing in contact with the roller cradle comprising a shiftable holddown roller, a bell crank rotatably mounting said holddown roller and manually operable means for shifting said bell crank to oscillate said holddown roller into and out of contact with a short length of glass supported by said rollers, said holddown roller having an axis of rotation parallel to said shafts; and means for heating a portion of glass tubing supported on said rollers."

The references relied on by the examiner and the board are:

Koenig   1,455,056        May 15, 1923
Dichter  2,226,303  December 24, 1940.

Appealed claim 12 recites a machine for heating a length of glass tubing until it is soft enough to be bent into another shape such as that of a neon sign letter. The machine includes two adjacent parallel horizontal shafts on which rollers are positioned. The shafts and rollers are disposed so that a glass tube will be cradled by the rollers of both shafts. The glass tube is caused to rotate by rotation of one of the shafts and is heated while rotating. Also included is a separate "holddown roller" meant to hold a short length of glass tubing in contact with the cradling rollers and comprising a roller with an axis of rotation parallel to the shafts and mounted on one end of a bell crank. The bell crank is mounted so that the roller may be shifted into or out of contact with the rotating length of glass tubing.

Appealed claim 13 recites the apparatus of claim 12 in combination with apparatus which holds a supply of glass tubes and will feed them one at a time from the holder. The latter apparatus comprises a table with an inclined top. Lengths of glass tubing are to be arranged on the table top in a single layer and parallel to the lowest edge of the top. A stop along the lowest edge of the table top prevents the tubes from rolling down and off the top. A tube is fed from the table top mechanically by pushing up the lowest tube until it clears the stop whereupon the tube rolls off by gravity. The other tubes remain on the table top until each in turn assumes the lowest position on the top and is pushed up over the stop. It is apparently intended that the lowest edge of the table top be adjacent, slightly above, and parallel to the shafts of the cradling rollers recited in claim 12 so that a glass tube rolling from the table top will fall into rotating position on the rollers. This desired coaction between the feeding machine and the rotating machine is, however, not recited in claim 13.

The Koenig patent discloses a machine intended to operate on lengths of glass tubing so as to simultaneously divide each length of tube into two parts and close the new end of each part. The Koenig machine comprises two adjacent parallel horizontal rotating shafts with disc rollers mounted thereon so that a glass tube will be cradled and rotated by the discs. Another pair of disc rollers, each mounted on an arm and positioned above an end of the glass tube, bear down on the tube. Each of the latter pair of upper rollers has a rotational axis in skewed relation to the rotational axis of the cradling roll shafts so that each will exert a force outward along the axis of the rotating glass tube. Heating flames are directed toward the middle of the cradled glass tube. When the glass becomes soft enough, the combination of outward and downward force of the upper rollers pulls the tube apart and causes it to fall from the cradling

rolls as two completed vials. Thereupon, a pusher arm is automatically actuated whereby another glass tube is delivered from an adjacent vertical magazine to the cradling rolls.

The Dichter patent discloses a machine designed to reform the closed or bottom end of a glass vial. As in the Koenig machine, the Dichter machine includes a pair of shafts with disc rollers mounted thereon and forming a tube-rotating cradle. Two glass vials are placed on the cradle with closed ends facing each other. The open end of each vial is attached to a rotatable blower head so that air may be forced into the vial. Another disc roller is disposed above each vial and opposite the cradling discs, and exerts a continuous pressure on each vial. These upper rollers are so arranged with their rotational axes skewed in relation to the rotational axes of the cradling rollers as to urge the vial axially toward the blower head. A firm fit of blower head with vial mouth is thus assured. Each blower head with attached rotating vial is then moved inward along the axis of rotation toward a button-shaped mold which contacts the heat-softened vial bottom and gives it the desired shape. Pressure of air inside the vial aids in the bottom shaping. The vial bottom may be heated before or while it is in the rotating cradle. Dichter also discloses that letters, decorations, or other marks may be formed on vial walls simultaneously with bottom shaping. For this purpose, a mold in the form of a roller bearing peripheral dies is urged down against the heated portion of the rotating vial. The mold or impression roller is mounted with a shaft on a vertically swingable arm so that the roller may bear down on or be raised from the glass vial. One pertinent embodiment of impression roller comprises a shaft to which are attached two discs. One disc serves as the impression roll. The other disc of diameter equal to the impression roll disc is mounted parallel thereto on the shaft and serves as a frictional drive wheel for

the impression roll disc since the former contacts the rotating vial, apparently at an unheated area.

The rejections of claims 12 and 13 are based on different grounds and we will consider them separately.

Claim 12 stands rejected as being "unpatentable over Dichter." The sole issue appears to be whether Dichter discloses or suggests a holddown roller having its axis of rotation parallel to that of the supported glass tube. It is not urged that Dichter does not disclose the combination of the other elements recited in claim 12. The board found that both the imprinting rolls and the skewed rolls of the Dichter machine perform a "hold-down function." With regard to the former rolls, the board stated:

"  *  *  *  As we view the function and operation of these rolls it is believed that they perform a function of applying a downwardly directed force to the top portion of the tube wall as the tube is cradled on the rotating rolls 22. This force acts to hold the tubing 'in contact with the roller cradle' and even though appellant designates his rolls as a holddown roll such designation is believed not to differentiate this element in a manner effective to point out a new and unobvious result or function.  *  *  *"

With regard to the skewed rolls which are disposed above the cradled glass tube, the examiner held that it was a matter of choice whether these rolls are placed parallel or at an angle to the axis of rotation of the glass tube. The board affirmed this holding, stating:

"  *  *  *  the skewed arrangement does not appear to be essential, as particularly evidenced by the omission thereof from Dichter's claims as to the scope of his invention as well as evidenced by consideration of the operation of the device,  *  *  *."

As to the mechanical linkage, including a bell crank, used to support appellant's holddown roller, the board was of the opinion that these details were "but arbitrary selections providing no essential difference in the contribution thereof to the functioning of the device."

Appellant urges that the axial force or pressure resulting from the skewed rolls of Dichter is essential to the operation of the Dichter machine and that there is nothing in Dichter to suggest that these skewed rollers might be oriented with their rotational axes parallel to the axis of the rotating vials. Appellant admits that the imprinting roller of Dichter could be adapted to perform a holddown function but argues that, as placed by Dichter, it performs an entirely different function and is inoperative to perform a holddown function since it is meant to contact a softened area of glass which would deform under pressure.

█ We agree with the board that claim 12 is unpatentable over Dichter. In our opinion, Dichter shows three sets of rollers which, although they may have other functions, would inherently hold the glass tubes down on the rotating cradle rollers while performing these other functions. The first of these is the impression roller. It is quite obvious that if this roller is to make letters, decorations or other marks on the revolving glass tube it must be in contact with the tube and therefore it would naturally have the effect of holding the tube down.

Appellant claims this impression roller could not also function as a holddown means because it is applied to the heated glass tubing and therefore it would also deform the tube. We disagree with appellant. The hold-down operation is inherent in the primary function of this roller of making the desired impressions and there is no evidence that in accomplishing its primary purpose it causes deformation of the glass tubing.

Claim 12 also reads on the frictional drive wheel disc of Dichter. There can be no question but that this disc is in contact with the glass tubing since it secures its momentum from the rotating vial itself and it is to be noted that this

roller operates on the unheated portion of the vial.

The third set of rollers of Dichter which inherently have a hold-down action are those that are skewed and urge the tubing axially toward the blower head. It is without significance that the primary purpose of these rollers is to cause this axial movement of the tubing rather than to hold it down. It would be perfectly obvious to any layman, no less to one skilled in the art, who was interested only in the hold-down feature to construct these discs so that their axes of rotation would be parallel to the axis of the tubing.

Appellant also argues that claim 12 sets forth a novel combination. However, we agree with the solicitor wherein he states in his brief that:

"Claim 12 sets forth nothing more than a combination of old elements each functioning only as in the prior art. There is no surprising consequence or new and additional function attributable to the fact of combination. It is well settled that arrangements of old elements so functioning are presumed obvious to one skilled in the art. In re Wagner, 32 CCPA 1088, 1092, 149 F.2d 939, 941 (1945); In re Smith, 34 CCPA 1007, 1012, 161 F.2d 274, 278 (1947); In re Crawford, 45 CCPA 750, 754, 250 F.2d 370, 373 (1957); In re Attwood, 45 CCPA 824, 828, 253 F.2d 234, 237 (1958)."

We come now to claim 13. The issues relating to the rejection of this claim have not been presented to us with clarity. Consideration of the several statements and arguments of the examiner, the board, appellant, and the solicitor leads us to the conclusion that claim 13 stands rejected primarily because it discloses a combination of a tube feeding device and a tube cradling device, and that such a combination is disclosed in the Koenig patent. Appellant urges that this rejection is not proper because Koenig does not disclose the specific tube feeding device and the specific tube cradling device recited in claim 13.

We believe the board's rejection of claim 13 is sound. Koenig teaches a combination of an apparatus which feeds the tubes and a cradle structure upon which the tubes are held down while rotated and heated. The basic combination of claim 13 is therefore old.

Appellant contends that because its feeder will handle bent tubes whereas Koenig's apparatus is not constructed to achieve this result, this fact endows its apparatus with patentable significance. We are of the opinion that this contention also is untenable for two reasons. First, although claim 13 does recite that the magazine consists "of a plurality of inclined slat members" and the application states that the slat members "may be removed to provide room for any bends which may have been formed in said glass tubes" there is nothing to indicate how the apparatus would handle bent tubes. The whole operation of the feeder as disclosed in the specification and diagrams negates the possibility of using this apparatus to feed bent glass tubes to the cradle structure. Second, assuming arguendo that this particular function could be accomplished by appellant's apparatus, there still would be no cooperation between the feeder and the cradle structure which would produce a patentable combination.

In view of the foregoing, we *affirm* the board's rejection of claims 12 and 13.

Affirmed.