**Application of Paul S. MENOUGH.**

**Patent Appeal No. 7004.**

United States Court of Customs and Patent Appeals.

Nov. 14, 1963.

Watts & Fisher, John P. Wetherill, Washington, D. C., B. D. Watts, Cleveland, Ohio, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 36–44 of appellant's patent application, Ser. No. 507,270, filed May 10, 1955, for "Heat Treating Tray."

The sole issue is patentability over the following references:

Menough 2,601,980 July 1, 1952; Feltes 1,750,039 Mar. 11, 1930; Shelden 1,768,157 June 24, 1930; Swiss Patent 128,684 Nov. 16, 1928.

The nature of the invention is fairly indicated by claim 36, which reads:

"36. A warp and rack-proof grid adapted to carry loads of articles to be heated through the high temperature in a heat treating furnace comprising an assemblage of a plurality of parallel load bars and a plurality of tie bars, the load bars having vertically disposed side surfaces and elongated openings extending lengthwise thereof approximately on their neutral axes, the vertical width of the load bars being several times the vertical width of said openings, *the tie bars* extending through said openings of a plurality of load bars and having limited movement therein relative to said load bars and *having horizontally disposed side surfaces,* and means for locking the load bars and tie bars together in loose engagement to prevent the creation of thermally induced stresses and to permit relative expansion and contraction of the bars when the grid is heated and cooled, said means including a plurality of *notches in one edge of each of the*

*tie bars into which the load bars extend."* [Emphasis ours.]

The remaining claims all depend from claim 36, adding thereto various limitations. Claim 38 reads:

"38. The combination of elements set forth in claim 36 in which tongues formed between each pair of notches in the tie bars are slightly less in length measured longitudinally of the tie bars than the distances to be established and maintained between the load bars in said notches."

The claimed grid is a support for articles to be annealed or otherwise heat-treated in a furnace. The application and the Menough reference, a patent of the appellant, disclose that the trays or grids used for this purpose are pushed through a tunnel-like furnace end to end, the work-supporting surface of the grid being an open structure on which the articles are piled up. The trays are subjected to uneven heating in the furnace and after being fully heated may be subjected to rapid cooling in quenching baths. These temperature changes are constantly repeated as the trays or grids are used over and over for as long as they are serviceable. Furthermore, since one tray is used to push another in a sort of train, it is desirable that they retain their initial rectangular shape and do not warp. The term "rack" as used in this case, as in the claim expression "rack-proof," refers to distortion and the claimed grid has the ability to resist substantial deformation from the initial rectangular configuration so that in pushing or being pushed through the furnace the grids do not malfunction, causing a wreck in the furnace.

As the Patent Office Solicitor has pointed out, appellant's patent 2,601,980, which the board has used as its main reference in sustaining the rejection, dis-

closes much of what is called for by the claims, including an annealing tray having load bars and tie bars, the latter passing through rectangular slots in the neutral axes of the latter, the tie bars having notches in one edge,[1] the width of the load bars in a vertical direction being "several times" the width of the openings therein,[2] along with the concept, which also underlies the present invention, of having the load bars and tie bars mounted for limited movement relative to each other so that they may expand and contract independently of each other when subjected to drastic temperature changes, thereby avoiding thermal stresses. Nevertheless, the Menough patent discloses a tray having a rectangular frame the parts of which are welded together and further supported by crossed brace rods, all for the purpose of maintaining rectangularity.

In an affidavit of record, appellant, referring to the aforesaid reference and another of his patents, says:

"The devices of these two patents are satisfactory for use under mild service conditions but neither one was entirely satisfactory for use under severe service conditions, such as being heated to high temperatures and then quenched from those temperatures. Breakage occurred in those devices when they were subjected to those severe conditions."

To meet those more severe conditions, appellant made certain changes which distinguish the instant invention from his earlier structure. He retained the general grid-like arrangement of load bars and tie bars, loosely connected together, but he changed his flat tie bars from a vertical position, like that of the load bars, to a horizontal position. In this position, which is also the direction of the long dimension of the slots in the load bars through which the tie bars pass, the notches in the tie bars extend

---

1. The reference tie bars have notches in *both* edges, on which, of course, the claim limitation "notches in one edge" reads.

2. Webster's New Collegiate Dictionary gives as one meaning of "several," "4.

Consisting of an indefinite number more than two, but not very many; * * *." The disclosure is of a load bar about three times the width of the slot in it.

longitudinally of the load bars. The result is that the grid is given a rectangular rigidity, within practical limits, which appellant's prior structure did not have independently of its rigid braced and welded frame. As appellant stated the matter in his request for reconsideration before the board,

"When the sides of the tie bars are disposed horizontally and the edges of the notches extended along and closely adjacent to the vertical sides of the load bars, any tendency of the tray to change its rectangular shape immediately brings the edges of all the notches against the vertical sides of all the load bars. As a result any such tendency is thereby successfully resisted. Since none of the bars was welded to any other bar but they were connected to one another for limited relative movement, all stress due to the weld metal was avoided."

The elements of appellant's new combination particularly relied on for patentability are, therefore, the *horizontal* positioning of the tie bars *and* the *engagement of the load bars by the notches therein,* the edges of which notches are "closely adjacent" the sides of the load bars, to maintain the desired rectangular rigidity while permitting thermal expansion and contraction.

Before passing to the determination of the question of patentability of this combination, we will discuss briefly the disclosure of the other three references insofar as they are relevant. All of them relate to the construction of gratings for use in floor openings and the like and none is concerned with the problems encountered with trays or grids used in annealing furnaces.

Feltes' grating has parallel load bars placed on edge and tied together with horizontally disposed tie bars passing through horizontal slots in the load bars. These slots are not on the "neutral axes" of the tie bars but are staggered alternately above and below such axes.[3] To hold his grating together, Feltes peens over the ends of his tie bars and then, by the use of a wrench, twists the portions of the tie bars lying between the parallel load bars from a horizontal position to a vertical position. This, as he says, gives "a high degree of initial rigidity in a grating." It is noted that Feltes lacks notches corresponding to appellant's and also lacks the desirable "loose engagement" of parts recited in the claims.

Shelden's grating has vertical load bars and vertical tie bars, the tie bars being notched. But since the tie bars are vertical, the notched portions thereof do not function to produce rectangular rigidity of the grid. The horizontal slots along a medial line or neutral axes of the load bars are not present in this reference.

The Swiss patent also shows a grating with vertical tie bars and is cited primarily for its disclosure of keeper bars, a feature we find it unnecessary to discuss at this point.

With respect to the subsidiary references, there is an issue as to whether they are "non-analogous art." Appellant argues the question only in a qualified way, saying that "the grating art is not so analogous to the annealing tray art that grating patents may be combined with annealing patents as a basis for rejecting the appealed claims." On this point we hold that the grating patents are not *so* non-analogous that they should be ignored; if not ignored they may be combined. On the sole issue before us, obviousness in view of the prior art,[4] we consider the disclosures on the basis

**3.** It is noted that the specification of the instant application, insofar as it is disclosed to us by the record, does not appear to use the term "neutral axes," which is a term found in the Menough reference. The term in the claims therefore lacks an antecedent, in violation of

proper practice. The term corresponding thereto in this application is "the medial line" of the load bars.

**4.** Appellant's brief indicates a belief that reliance on *several* references shows the rejection to be "on the statutory basis

of what they would be likely to suggest to persons of ordinary skill in the annealing tray art. All the references relate to metal grid construction of a rather simple sort and they should all be considered for what they teach about possible mechanical arrangements.

The first decision of the board was that the only discernible distinction in claim 36 over the Menough patent, on which it chose chiefly to rely, "resides in the statement that the tie bars have horizontally-disposed side surfaces." On that basis the board was "of the opinion that claim 36 does not patentably define over Menough," on which basis it affirmed the rejection of claim 36. With that decision we agree. Feltes shows horizontal tie bars. There are, however, all of the dependent claims, each of which is, of course, more limited than claim 36. The question raised by appellant's brief is whether any of the claims is patentable.

The board dismissed all of the dependent claims rather summarily on what we deem to be an unjustifiable assumption that "appellant does not consider that the limitations added by claims 37 to 44 materially affect the patentability of these claims * * *."

■ While appellant has argued his case before us primarily on the basis that claim 36 is patentable, in doing so he has made it quite clear what he regards as the patentable aspects of the invention disclosed. We encounter the same difficulty as the board, namely, that the novel structure and new function on which appellant relies is not particularly pointed out and distinctly claimed in claim 36. Appellant's brief argues:

"In the horizontal position, the tie bars performed the new function of resisting the racking of the tray. This new function was performed by the horizontally extending notches in the tie bars, the positioning of the load bars in those notches and the longitudinally extending horizontal contact of the tongues with the side surfaces of the vertical load bars."

While we are unable to find this subject matter in the structure defined by claim 36, it does reasonably appear to us when the further limitations of claim 38 are added thereto, for it is the dimension of the tongues formed by the notches relative to the distances between the load bars which bring about the function on the basis of which appellant argues for patentability of the invention. We therefore find claim 38, which includes claim 36, to be patentable. In our opinion the subject matter of claim 38 would not be obvious within the meaning of section 103.

As for the other dependent claims, we agree with the board that the added structure called for in these claims, over what is in claim 36, is disclosed in the references and, furthermore, that its incorporation in the combination of claim 36 would be obvious to one of ordinary skill in the art.

■ In affirming the rejection of a number of combination claims it should not be assumed that we approve of a somewhat novel proposition of law submitted to us in the Patent Office brief as follows:

"It is submitted that each of the refused claims sets forth a combination of old elements whose function as a combination is *merely the sum of the old functions of the individual elements,* and that therefore the combination must be *presumed to be obvious* to one skilled in the art." [Emphasis added.]

Two of our prior decisions are cited in support: In re Hatten, 280 F.2d 146, 47 CCPA 1169, and In re McCabe, 287 F.2d 921, 48 CCPA 881. The latter quotes from a Patent Office brief citing four other cases. We have examined all of the cases and find no support for the above-stated proposition. We have found no reference therein to any pre-

---

of lack of novelty." On the contrary, it shows it to be predicated on 35 U.S.C.

§ 103, obviousness in view of the several references.

sumption of obviousness (or lack of "invention") and it seems evident to us that in every mechanical combination, whether patentable or not, the function of the combination is bound to be the "sum of the old functions of the individual elements." Mechanical *elements* can do no more than contribute to the combination the mechanical functions of which they are inherently capable. The patentability of combinations has always depended on the unobviousness of the combination per se.

The decision of the board is *affirmed* with respect to all claims on appeal with the exception of claim 38, as to which it is *reversed*.

Modified.