**Application of Alfred R. CONTI and
Daniel J. Menter.**

**Patent Appeal No. 7222.**

United States Court of Customs
and Patent Appeals.

Nov. 5, 1964.

———◆———

Franklin E. Quale, Detroit, Mich.,
(Whittemore, Hulbert & Belknap, De-
troit, Mich., George A. Degnan, Wash-
ington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C.,
(Jere W. Sears, Washington, D. C., of
counsel), for the Commissioner of Pat-
ents.

Before RICH, Acting Chief Judge, and
MARTIN, SMITH, and ALMOND,
Judges, and Judge WILLIAM H. KIRK-
PATRICK.*

ALMOND, Judge.

This is an appeal from the decision of
the Board of Appeals affirming the exam-
iner's rejection of appellants' claims 35
and 36 as unpatentable over prior art.
No other claims remain in appellants' ap-
plication[1] entitled "Cutting Tool."

Appellants state in their brief that
claim 35 is the only claim to be dealt with
inasmuch as "Claim 36 depends there-
from, and simply defines certain cam and
clamp structure more specifically than
Claim 35."

Claim 35 reads as follows:

"In a cutting tool, a body provided
with a flat support surface and
fixed locator portions extending
transversely of said support surface
and disposed in intersecting planes
transverse of said surface, a cutting
tip of polygonal outline having like
flat, parallel side surfaces one of
which rests on said flat support sur-
face, said tip having a recess within
the polygonal outline thereof pro-
viding a further surface extending
transversely of said support sur-
face, and also having more than two
accurately formed locating edge sur-
faces defining its polygonal outline,
pairs of which surfaces intersect a
side surface of the tip in cutting
edges, said tip being indexable in a
plane paralleling said side surfaces
to selectively present different inter-
secting edge surfaces in an operative
cutting relation of the cutting edges
thereof to said supporting sur-
face, and tip positioning and clamp-
ing means movably mounted by said
body, comprising a member extend-
ing into said recess for operating en-
gagement with said further surface
upon movement of said member in a
direction paralleling said support
surface, means movably carried by
said body to so move and positively
engage said member against said
further surface in a direction having
components toward said respective
locator portions sufficient to bring a
pair of said tip edge surfaces into
rigid locating and locking engage-
ment with said locator portions, said
last named means then maintaining

* United States Senior District Judge for
the Eastern District of Pennsylvania, des-
ignated to participate *in place of Chief
Judge WORLEY*, pursuant to provi-
sions of Section 294(d), Title 28, United
States Code.

1. Serial No. 646,897, filed March 18, 1957.

said member in a position in which said tip is rigidly clamped between said locator portions and said further surface of said recess, and clamp means for clamping said tip against said flat support surface with said edge surfaces so engaged rigidly against said locator portions of the body."

Appellants' elected species are disclosed in the embodiment of Figures 1 through 6 and 8, reproduced below:

FIG.1.
FIG.2.
FIG.4.
FIG.3.
FIG.5.
FIG.8.
FIG.6.

As will be seen from the above drawings, the body 10 of the holder is adapted to be rigidly mounted to the usual machine tool post. The forward portion of

the body 14 is formed to provide a generally horizontal surface bounded at its rear by a pair of upright surfaces 22 and 24 ("locator portions") which are in intersecting planes transverse of (shown as perpendicular to) the upper surface of a pad element 18 secured to the horizontal surface. Upper surface 21 of element 18 may be considered as the "flat supported surface" of the claim. Cutting tip 16 rests on surface 21 and is clamped thereagainst after being chucked rigidly against locators 22, 24. The tip is in the form of a polygon (shown as a square) having like parallel and flat upper and lower surfaces intersected by four upper right edge surfaces 27 defining the polygonal outline. The intersection of edges 27 with the upper and lower surfaces 26 provides the cutting edges 28 of the tips, which in effect number eight, since the tip is reversible on its support.

The angle intersection of the locator surfaces 22, 24 of body 10 with one another is the same as that of the intersecting edge surfaces 27 on body 10.

The tip 16 is formed to provide a circular hole located within and spaced from the edge surfaces 27. Upper clamp member 36 is provided with an integral, downwardly extending projection 40 at its forward portion. Projection 40 is adapted to enter downwardly in hole 30 and the bottom portion of the clamp surrounding projection 40 will ultimately drive the tip downwardly onto support surface 21 in finally clamping the tip in place.

Clamp 36 is provided at its rear with wedge or cam portion 38 for engagement with inclined surface 32 on the holder body 10. Upon tightening screw 44 the resultant camming action draws projection 40 rearwardly into engagement with the upright wall provided by recess 30 (this wall being the "further surface" of the claim), moving in a direction which represents the resultant of components toward the respective locator portions 22 and 24, i. e., on a diagonal across opposite corners of tip 16. This movement ends in a rigid horizontal trapping of the insert to the holder 10 under a three-jaw chucking grip, i. e., between clamp projection 40 within recess 30 and the two outer zones of engagement of locator portions 22, 24 with the tip. Fully tightening screw 44 secures final downward clamping of tip 16 in place.

Appellants state that tip shift cannot take place because the tip is positively pulled back and clamped down and when loosened, indexed and reclamped, the tip unfailingly takes an exactly same position of the new cutting edge relative to the holder body, being positively locked against lateral displacement under side thrust in machining.

The references relied on below are:

| | | |
|---|---|---|
| Fors | 1,396,180 | November 8, 1921 |
| McKenna et al. | 2,598,581 | May 27, 1952 |
| Thompson et al. | 2,645,003 | July 14, 1953 |
| Kralowetz | 2,664,617 | January 5, 1954 |
| British Patent | 320,809 | October 24, 1929 |
| British Patent | 350,706 | June 18, 1931 |

Bulletin 552–M, published by Wesson Company, April 25, 1955.
Kennametal Cemented Carbide Products, Catalog N. 49.

---

Fors discloses a drawback clamp for securing a cutting bit to a base. By tightening a nut the rear inclined surface of the clamp follows a base cam surface and draws the clamp rearwardly. A forward lug integral to the clamp engages the rear surface of a groove in the bit and forces the bit back against a substantially vertical base surface. The lug will exert a downward force on the base of the groove causing the bit to seat firmly on the base surface. This surface

is provided with a longitudinally extending key which enters a corresponding keyway in the cutting bit. The application states: "As a result of the construction described, it will appear that the cutting bit is positively held in all directions by the clamping action and that therefore the results secured are the same to all intents and purposes as though the entire tool were made of expensive high speed steel."

McKenna et al. disclose a structure with a carbide throwaway cutting tip. The tip is shown having parallel top and bottom surfaces with polygonal boundaries at their intersections with pyramidal side surfaces. The bit is provided with a countersunk axial hole which receives a screw bolt to secure the tip to the shank. The tip is indexable about the bolt and is backed by a tool shank shoulder along one of its edges. The specification states "that the cutting element is screwed or bolted to the shank, and kept from turning by a vertical surface or shoulder on the shank which is of such conformation and position that it accurately directs the cutting element to a selected one of its plurality of positions." It is further stated that: "By turning the stud and the socket nut in opposite directions, the stud will be drawn downwardly and will draw the cutting bit downwardly against the cutting element receiving surface, as well as rearwardly against the abutment edge."

The Kennametal publication shows replaceable and indexable carbide cutting tips secured to shanks by central cap screws, the shank having two angularly disposed shoulders for locating engagement with adjacent sides of a polygonal tip.

Bulletin No. 552–M discloses various replaceable carbide tips and securing clamping means in an anvil locator on a tool shank. One anvil locator shows a forward tip receiving recess similar to that of Kennametal and appellants' as will be seen by reference to appellants' surfaces 21, 22 and 24. In the Bulletin a chip-breaking clamp is employed for securing the tip in position on the anvil

locator. The lock screw does not pass through the tip. It is stated that this embodiment permits easy and rapid insert indexing or changing regardless of holder position. "Adjustments are made without removing clamp."

British Patent 320,809 discloses indexable cutting tips which are held in place on the shank by a tapered wedging pin. The head of the pin forces the tip against a shoulder on the shank. A portion of the tip near the base thereof wedges under an undercut inclined portion of the shoulder, thus securing the tip both laterally and axially.

British Patent 350,706 discloses a rotatable eccentric pin instead of the tapered wedging pin of British 320,809. The throw of the eccentric is normal to a single shoulder. The locking concept, however, is similar to British-809 with an additional fixture present. The specification states (numerals omitted):

"A recess is formed in the holder and is bounded on one side by the undercut shoulder and on the opposite side by a second shoulder or wall which is inclined to the shoulder so that the recess is of a wedge shape, narrowing in the direction in which the cutting pressure is applied. The extension of the cutter is provided with a projecting portion fitting the recess. It will be appreciated that when the wedging pin is turned to apply the locking pressure there will be a slight sliding movement of the cutter along the shoulder. When the wedging pin is inserted through the holder as shown in Figures 6 and 7 it is therefore turned in the sense indicated by the arrow shown in Figures 6 and 8 in order that exertion of the locking pressure shall also wedge the projecting portion into the recess, thereby effectually relieving the wedging pin of any shearing stress."

Thompson et al. disclose use of cutter buttons, either circular or polygonal. The buttons are indexable and reversible and are held by bolts which pass through

center holes in the buttons and are threaded into the cutter base. The examiner stated that: "Since Kralowetz and Thompson are cumulative in their showing of reversible and indexable cutter tips mounted in conforming seats specific application will be confined to the Bulletin for simplicity."

The examiner rejected the claims as unpatentable over Fors in view of Bulletin 552–M in contemplation of 35 U.S.C. § 103. With reference to the Bulletin clamp, the examiner reasoned that to make this clamp a draw clamp as taught by Fors would not constitute patentable invention but mere utilization of the teachings of Fors in an obvious manner and that the use of a "square indexable tip in Fors by fashioning the recess as taught by the Bulletin constitutes the mere modification of Fors in accordance with the teachings of the art."

The board reversed the examiner's rejection on indefiniteness but sustained the rejection on prior art. The board stated that while Fors alone does not disclose a relating of positioning faces and outline forming locating edge surfaces of the type stated in claim 35, it got a different view of the claimed subject matter when considering the combined references. The board further stated and held that:

"We appreciate that no single reference displays the positioning of a tool on a support surface by holding means creating forces against two positioning surfaces in the manner claimed. The art, however, as represented by Bulletin 552M does indicate that replaceable and indexable cutters have been placed in position on a support surface and urged into the angular fork provided by two positioning surfaces as a means of repeating a positioning of a cutter tool. When Fors further illustrates to the art the simple expedient of urging a replaceable tool tip into a fixed position along a support face and against at least one positioning face, it appears to us that persons of ordinary skill in the art would find it obvious to employ such force producing practices in connection with cutter elements having two positioning faces. Pressure in a manner to have components against two faces is an old principle in using the cutters of Bulletin 552M. To substitute the mechanical forces of Fors requires substitution of his draw clamp and provision on the cutter of an engageable recess. To employ the square cutter of Bulletin 552M * * * in a clamp combination such as suggested in Fors would require grooving the upper face in a diagonal manner or otherwise providing a surface for engagement by the clamp. That replaceable tools can have such surfaces is taught by Fors; and that indexable bits can have interior surfaces associated with connecting devices is further present in references such as Thompson et al., Kralowetz, McKenna et al., and the British patents. While the formation of the Bulletin 552M cutter with a diagonal recess may take out of consideration two of the four cutter corners available, it is noted that claim 35 does not distinguish over the resulting cutter."

Appellants point out that indexable tips of polygonal edge outline, such as the claimed invention is especially concerned with, came into extensive use in 1951 and that it was the practice of the machinist in the use of this type of tip to hold the tip in place by thumb pressure in order to properly position the tip with an edge or a pair of intersecting upright edges against one or more upright abutment surfaces on the holder. This procedure, according to appellants, gave no assurance that a lessened or released thumb pressure would not permit the tip to shift on the supporting surface relative to the abutment surface or surfaces before the clamp was tightened, thus resulting in inaccurate or variable clamping on the holder during the process of indexing or replacing the tip. The result under the pressure of operation was to shift the tip out of an ex-

actly pre-located position on the holder body causing a loss of precise cutting uniformity.

Appellants assert that they were the first to determine the causes of the loss of precision and lack of uniformity in tip cutting operations and that their claimed invention eliminates these causes by providing means to exert a positive, rigid chucking and trapping action on the tip at three points, forcing the tip against accurately positioned locator surfaces in the direction of the tip's own plane, prior to rigidly clamping the tip down on the holder body.

It would seem axiomatic that accurate, secure and maintainable positioning of an indexable tip would be of prime and constant concern to those who operate tip cutting devices. In this respect we note that the Bulletin 552–M tip holder constructions are asserted as affording "Positive insert location—always on center" and that they are designed to obviate the stress of the variable angular pressures to which such tips are subjected in use.

As hereinabove noted, the essence of appellants' claimed invention is the supplanting of thumb positioning by providing backing support to eliminate turning or canting during operation. It seems appparent that this facility is achieved by the McKenna et al., stud and backing shoulder. Assuming precise machining of the McKenna tip and backing element, the round seat for the stud head and synchronization of the stud aperture in the tip with that of the base, thumb pressure is clearly obviated and tendency to cant or turn eliminated. The same attributes may fairly be applied to Kennametal's similar construction for securing polygonal tips. Instead of employing only one locating shoulder, as in McKenna et al., Kennametal discloses two shoulders for locating engagement with adjacent sides of the tip. Then, too, Fors teaches accurate positioning of a replaceable tip against canting by the use of a draw clamp.

With reference to providing means to eliminate the necessity of thumb positioning and means for backing support to prevent turning or canting, we consider apt the observation of the solicitor that "Rather than blazing a new trail, appellants appear to have merely followed an already well blazed trail."

It seems apparent to us that if one desired the advantages of tip positioning and stabilization and facility of indexing as shown in McKenna et al. and Bulletin 552–M, it would be reasonable to expect him to attempt to secure such advantages in a unitary construction.

We find ourselves in agreement with the solicitor that it would appear obvious to one of ordinary skill in the art to use the angled positioning shoulders in the anvil locator of Bulletin 552–M with means to draw back on an internal point in the tip against the shoulders as in McKenna et al. and Kennametal. Such means compatible with retention of the simple external clamping of the Bulletin 552–M constructions affording easy indexing, are obviously afforded and suggested by adoption of the draw clamp teaching of Fors. Such would integrate the desired means with the type of clamping already present in the Bulletin 552–M disclosures.

Appellants lay stress on "a positive, three-jawed, internal and external initial trapping of the insert in the holder, as between the surface of recess 30 and the respective locator portions 22, 24." It seems apparent that such a result inherently follows from the proposed modification of the clamp in the Bulletin 552–M construction where, as pointed out by the solicitor, the clamping screw is adjacent the cleft between locator surfaces and would not readily permit draw by a Fors type clamp parallel to either locator surface. Furthermore, it is noted that three point entrapment of cutting bits is old in the art, as disclosed by British Patent No. 350,706.

It is clearly manifest that appellants' construction consists of a combination of elements known to the art involved here

without a manifestation of any unusual or surprising consequences.

In In re McCabe, 287 F.2d 921, 48 CCPA 881, this court expressed agreement with the statement of the solicitor that:

> "There is no surprising consequence or new and additional function attributable to the fact of combination. It is well settled that arrangements of old elements so functioning are presumed obvious to one skilled in the art. In re Wagner, 32 CCPA 1088, 1092, 149 F.2d 939, 941 (1945); In re Smith, 34 CCPA 1007, 1012, 161 F.2d 274, 278 (1947); In re Crawford, 45 CCPA 750, 754, 250 F.2d 370, 373 (1957); In re Attwood, 45 CCPA 824, 828, 253 F.2d 234, 237 (1958)."

Appellants advance the proposition that "in order to sustain a finding of 'obviousness' in the case of a *combination* of references relied on, that at least one of the references suggest or hint at a desirability or feasibility of combining a feature or features shown therein with a feature or features of another reference, though even not necessarily showing *how* this is to be done in a structural way." We think that the structures shown in the references when contemplated by one of ordinary skill in the art would, in themselves, suggest or hint at the combination of old features here claimed.

We find no reversible error in the decision of the board holding "that persons of ordinary skill in the art working with the knowledge of cutter structures and practices available at the time of appellants' entry into the field would have found it obvious to apply the traction clamp tool holder principle of Fors in connection with the positioned tool structure of Bulletin 552–M."

The decision of the board is affirmed.

Affirmed.

SMITH, J., took no part in the decision of this case.